UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ERIBERTO FLORES,<br><br>Plaintiff,<br><br>v.<br><br>EAST CHICAGO CITY OF, et al.,<br><br>Defendants. | Case No. 2:23-CV-143-GSL |

**OPINION AND ORDER**

Plaintiff filed his Amended Complaint at [DE 57]. Defendants moved for Summary Judgment on the Amended Complaint at [DE 99], with their Brief in Support filed at [DE 101]. Plaintiff responded at [DE 104], to which Defendants replied at [DE 107]. For the reasons below, Defendants' Motion for Summary Judgment is **GRANTED**.

*Background*

In support of their Motion and Brief in support of summary judgment, Defendants filed a Statement of Material Fact at [DE 100], to which Plaintiff responded at [DE 103], and Defendants replied at [DE 108]. In Plaintiff's Response to Defendants' Statement of Material Facts, Plaintiff disputes many of Defendants' asserted facts, but fails to cite evidence supporting each dispute of fact, violating Local Rule 56-1(b)(2)(C). *See* N.D. Ind. L.R. 56-1(b)(2)(C).[1] "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party

[1] Notwithstanding, Plaintiff's Responses, in some instances, border on inappropriate. As one example, Plaintiff's Response to Paragraph 20 of Defendants' Statement of Material Facts reads: "RESPONSE: ADMIT. For a further answer, Plaintiff states that Helen Keller could see that Plaintiff was not the suspect in the surveillance video." [DE 103 at ¶20].

render the facts presented by the moving party as undisputed." *McCormick v. Goebel*, 655 F. Supp. 3d 748, 756 (N.D. Ind. 2023) (quoting *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015)).

While Plaintiff and Defendant Washington are known to each other due to previous law enforcement interactions and legal disputes, the present action arises from Plaintiff's arrest on April 29, 2021. [DE 103 ¶¶ 1-5, 7]. At approximately 9:20 p.m. on or about April 2, 2021, there was a shooting in the vicinity of 148th Street and Magoun Avenue in East Chicago, Lake County, Indiana. [*Id.* at ¶ 10]. Defendant Washington was assigned to investigate the shooting. In doing so, he reviewed witness statements and surveillance video. [*Id.* at ¶ 11-13, 20]. Defendant Washington concluded that Plaintiff was responsible for the shooting. [*Id.* at ¶ 16-19, 24-26]. On April 29, 2021, Defendant Washington submitted an Affidavit of Probable Cause to the Lake Superior Court asserting that he had probable cause to believe that Plaintiff committed attempted murder, aggravated battery, battery by means of a deadly weapon, and battery resulting in serious bodily injury, which, while initially denied, was ultimately accepted by the court. [*Id.* at ¶ 32-33; DE 102-4; DE 102-10; DE 102-11]. As a result, Plaintiff was arrested on April 29, 2021. [*Id.* at ¶ 7, 34]. However, the criminal charges against Plaintiff were later dismissed. [*Id.* at ¶ 37].

On April 26, 2023, Plaintiff filed this lawsuit against Defendants alleging a false arrest claim, *Monell* claims, an excessive force claim under 42 U.S.C. §1983, a civil conspiracy claim under 42 U.S.C. §1985(3), a failure to train claim under 42 U.S.C. §1983, and various state law claims, including defamation and vicarious liability claims. [*Id.* at ¶ 9, 40; DE 57].

*Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025). Facts are deemed "material" when they "might affect the outcome of the suit under the governing law," and a dispute is considered "genuine" when the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Osborn*, 126 F.4th at 1258 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020). While the facts are construed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless present sufficient evidence to place his "'version of events' beyond the level of mere 'speculation or conjecture.'" *Osborn*, 126 F.4th at 1258 (quoting *Est. of Biegert ex rel. Biegert v. Molitor*, 968 F.3d 693, 701 (7th Cir. 2020)).

When analyzing a motion for summary judgment, the Court need only consider the cited materials and need not search the record for other evidence. Fed. R. Civ. P. 56(c)(3). The Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Davis v. United States*, 400 F. Supp. 3d 745, 747 (S.D. Ind. 2019) (citing *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573 (7th Cir. 2017)). *See DeSilva v.*

*DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."). With these principles in mind, the Court will now turn to Defendants' Motion for Summary Judgment.

*Discussion*

I. False Arrest Claim

First, Defendants argue that summary judgment on Plaintiff's false arrest claim is proper because probable cause existed at the time of his arrest. [DE 101, Page 8]. In support, they cite *Stokes v. Board of Educ. Of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010), asserting that probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed… an offense," even if that belief turns out to be incorrect. [*Id.*]. Defendants further argue that if probable cause exists at the time of an arrest, it is an absolute bar to a fourth amendment false arrest claim. [*Id.*]. Defendants assert that here, there were sufficient facts supporting a probable cause determination that Plaintiff was the perpetrator of the crimes for which he was arrested. Those facts included witness statements which were corroborated by surveillance video.

The first witness, who was with the victim at the time the shooting occurred, stated that they were seated in a dark colored vehicle. [DE 102-4]. Two additional witness statements indicated that an overweight Hispanic male was seen walking up to a dark colored vehicle. [*Id.*]. The witnesses saw a Hispanic male stop and speak to the occupants of the dark colored vehicle. [*Id.*]. After a few moments, both witnesses heard gunshots ring out. [*Id.*]. One of the two witnesses specifically stated he heard 4-5 gunshots and saw the Hispanic male fire the last shot into the dark colored vehicle. [*Id.*]. Both witnesses saw the Hispanic male running down the

street after hearing the gunshots. [*Id.*]. Defendant Washington reported that there were five spent shell casings recovered from the area where the shooting occurred, and that the surveillance footage showed a Hispanic male, who he believed to be Plaintiff, approach a dark colored vehicle before running back down the street at a full sprint. [*Id.*]. Defendant Washington also believed that the surveillance footage showed that prior to the shooting incident a vehicle slowed in front of Plaintiff's residence before travelling further down the road and coming to a stop at the corner. [*Id.*].

Plaintiff argues that summary judgment should not be granted on this claim, because he was held in custody without probable case. [DE 103, Page 3]. Specifically, he argues that when an arrest is judicially authorized, like here, the district court may presume the validity of the warrant and information offered to support it. [*Id.*]. However, that presumption gives way upon a showing that the officer offering the warrant knowingly or intentionally, or with a reckless disregard for the truth, made false statements to the judicial officer, and that those false statements were necessary, or material, to the probable cause determination. [*Id.* at 4 (citing *Camm v. Faith*, 937 F.3d 1096 (7th Cir. 2019) (quoting *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)]. *See Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019) (citing *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015)). Materiality is evaluated by "eliminat[ing] the alleged false statements, incorporat[ing] any allegedly omitted facts, and then evalut[ing] whether the resulting 'hypothetical' affidavit would establish probable cause." *Rainsberger*, 913 F.3d at 647 (quoting *Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir. 2012)). Probable cause exists when the remaining facts, viewed from the standpoint of an objectively reasonable officer, show a "probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983)).

Plaintiff alleges that Defendant Washington lied about "the contents of surveillance videos, and the sequence of events recorded by surveillance, to corroborate a falsified 'identification' of a male suspect as [Plaintiff]." [DE 104 at 3]. Plaintiff also argues that Defendant Washington changed the sequences of events in his probable cause affidavit to support his version of events and arrest Plaintiff. [*Id.*]. Specifically, Plaintiff argues that the dark colored vehicle never slowed or stopped at Plaintiff's residence, and in-fact, was never seen driving down Magoun Avenue at all. [*Id.* at 6]. Instead, Plaintiff asserts that two vehicles drive past Plaintiff's house after the shooting occurs, not before. [*Id.* at 5]. Furthermore, Plaintiff believes that in the surveillance video it is clear that the suspect is not him because on the date of his arrest his facial hair, use of eyeglasses, and gait do not match the suspect on the surveillance video. [*Id.* at 5].

Here, the probable cause affidavit signed and submitted by Defendant Washington included the statements of four individual witnesses, one of whom was in the car with the victim at the time the shooting occurred, and two which saw and heard the events in real time. *See* [DE 102-4]. The last paragraph of the probable cause affidavit contains Defendant Washington's own observations from the surveillance video.

> The dark colored vehicle is traveling northbound on Magoun Avenue and slows and almost stops at a green house (the residence of Eriberto Flores) which is directly across the street from McKinley Elementary School. The dark vehicle then speeds up and then stops at the corner. A short time later, affiant observes a male subject who affiant recognizes to be Eriberto Flores appear to be talking on the phone while walking northbound in the middle of the street. He then observes Flores walk up to the vehicle which was stopped. All of a sudden he observes Flores running back down Magoun Avenue at a full sprint.

[*Id.*].

Plaintiff alleges that Defendant Washington lied in the first and second sentences because they are not clearly supported by the surveillance video. However, even if those two sentences are removed from Defendant Washington's description of events, his remaining observations, combined with the witness statements, viewed from the standpoint of an objectively reasonable officer, still show a "probability or substantial chance of criminal activity." *Wesby*, 583 U.S. at 57 (quoting *Illinois*, 462 U.S. at 243-44, n.13).

Plaintiff also contests Defendant Washington's assertion in the probable cause affidavit that he recognized the suspect walking on the street to be Plaintiff. However, the Court finds that Defendant Washington's belief that the suspect was Plaintiff was reasonable, even if ultimately incorrect. Plaintiff provides this Court with only a headshot of himself, which shows an overweight Hispanic male that reasonably could be the suspect on the surveillance video. Plaintiff himself states that he has a limp, and while he contests that the suspect on the surveillance video does as well, it is reasonable to view the suspect on the surveillance video as having a challenged gait. Defendant Washington was familiar with Plaintiff from previous interactions, and reasonably believed he had seen Plaintiff on the surveillance footage.

Plaintiff's claim fails because probable cause existed at the time of his arrest and Plaintiff's arguments to the contrary are unavailing. For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's false arrest claim.

II. *Monell* claims

Defendants move for summary judgment on Plaintiff's *Monell* and vicarious liability claims against the East Chicago Police Department. [DE 101 at 6]. A municipality is only liable under *Monell* when it implements an official policy or custom that results in a constitutional deprivation of rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). A

municipality cannot be held liable on a respondeat superior theory. *Monell*, 436 U.S. at 691. Defendants argue that Plaintiff himself testified that he has no knowledge of any rule, custom, or policy implemented by the City or its police that led to his Constitutional rights being violated. [*Id.* (citing DE 102-5, Page 58:2-16)]. Defendants further argue that Plaintiff designated no evidence proving that the City employed an official policy, widespread custom or practice that is responsible for any alleged constitutional deprivation claimed by the Plaintiff.

Plaintiff's response appears to collapse his separate failure to train and *Monell* claims into one claim, as he argues that "[w]here a 'failure to train' claim alleges or asserts a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." [DE 104 at 7 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989))]. Plaintiff argues the City is deliberately indifferent to the recurring risk that a "single officer, hell-bent on prosecuting an innocent civilian, will a) falsely, and wildly so, misidentify a subject in surveillance, and b) then falsely characterize a video no one watches to 'corroborate' his 'hunch' based upon lies about the timing of events and the contents of the video." [*Id.* at 8]. Plaintiff further argues that "[w]hile this may be a single incident, East Chicago knows its officers will confront video surveillance of crimes." [*Id.*].

Plaintiff fails to designate any evidence to rebut Defendant's arguments and evidence that no such custom, policy, or practice existed. Plaintiff also fails to address his concession that he has no knowledge of any rule, custom, or policy implemented by the City or the police department that led to his Constitutional rights being violated, or that he failed to designate any evidence proving that the City employed an official policy, widespread custom or practice that is responsible for any alleged constitutional deprivation claimed by the Plaintiff.

For these reasons, Plaintiff did not meet his burden to "present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister*, 983 F.3d at 969. The Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's *Monell* and failure to train claims.

III. Excessive Force Claim

Defendants move for summary judgment on Plaintiff's excessive force claim. [DE 101 at 3]. "[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). When a police officer's actions are "objectively reasonable in light of the facts and circumstances confronting them" from the perspective of a reasonable officer, the officer's actions do not constitute excessive force. *Graham*, 490 U.S. at 397.

Defendants argue that Plaintiff's claim fails for two reasons. First, there is no evidence Plaintiff was "roughed up" or suffered any injuries during the arrest. [*Id.* at 5]. In fact, Defendants assert that Plaintiff's own discovery responses indicate that he suffered no physical injuries. [*Id.* (citing DE 102-5, Page 39:15-22)]. Second, Defendants argue that Plaintiff's claims are barred by qualified immunity, because there is no evidence, at all, that Defendants used force against Plaintiff, "let alone deadly or excessive force." [*Id.* at 6].

Plaintiff does not respond to Defendants arguments or address the excessive force claim anywhere in his response. *See generally* [DE 104]. Defendants argue that "[p]erfunctory, undeveloped arguments, without discussion or citation to pertinent legal authority are waived." [DE 107, Pages 6-7 (citing *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)]. The Court agrees. Plaintiff did not meet his burden to "present evidence sufficient to establish a triable issue

of fact on all elements of its case." *McAllister*, 983 F.3d at 969. For these reasons, the Court GRANTS Defendants' request for summary judgment on this claim.

IV. Conspiracy Claim

Defendants move for summary judgment on Plaintiff's conspiracy claim. [DE 101 at 9]. In order to successfully establish a claim under 42 U.S.C. § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999) (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7,* 94 F.3d 307, 311 (7th Cir. 1996)). The plaintiff also must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Green v. Benden,* 281 F.3d 661, 665 (7th Cir. 2002) (citing *Majeske,* 94 F.3d at 311). In conclusion, plaintiff must show "…the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1022-23 (N.D. Ind. 2009) (citing *Hernandez*, 197 F.3d at 263)).

Here, Defendants argue that there is no evidence that a conspiracy existed, and that Plaintiff even admitted that he was not aware of any agreement between the officers to wrongfully arrest him. [*Id*. at 10]. Defendants argue that Defendant Washington alone conducted the investigation and prepared the probable cause affidavit, and the other officers were only involved in the arrest of Plaintiff. [*Id.*].

In response, Plaintiff makes only a few statements which could arguably support his conspiracy claim. First, he states that "[a]ll three (3) officers involved in the false arrest and imprisonment of Plaintiff are liable for Washington's lies." [DE 104 at 3]. However, Plaintiff fails to provide any citation to evidence supporting this assertion. Plaintiff later states, "[n]ext, Buchanan and Zamorra arrested Plaintiff without probable cause, based upon the lies of Det. Washington. They are not entitled to summary judgement, either. They did nothing to ascertain a basis for Plaintiff's detention." [DE 104 at 8]. These statements lack evidentiary support, and are insufficient to establish that Defendants ever came to an agreement to deprive Plaintiff of his rights.

Plaintiff failed to provide this Court with any evidence rebutting Defendants' arguments and failed to meet his burden to "present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister*, 983 F.3d at 969. The Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's conspiracy claim.

V. State Law Tort Claims

Finally, Defendants move for summary judgment on Plaintiff's state law tort claims. [DE 101 at 10]. The Indiana Tort Claims Act, codified in Indiana Code 34-13-3-8(a), requires that a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission created under I.C. 27-1-29; within one hundred eighty (180) days after the loss occurs. Actual knowledge of the occurrence on the part of the political subdivision or an employee of the political subdivision does not satisfy the notice requirement of the ITCA. *Orndorff v. New Albany Hous. Auth.*, 843 N.E.2d 592, 596-597 (Ind. Ct. App. 2006). *See Fowler v. Brewer*, 773 N.E.2d 858, 865 (Ind. Ct. App. 2002).

In addition, the law enforcement immunity provision of the ITCA provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce ... a law ... unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8)(A). In determining whether immunity is available, a court must determine whether: (1) the officer was acting within the scope of his employment when the injury to plaintiff occurred; and (2) whether the officer was engaged in the enforcement of a law at that time. *Wynn v. City of Indianapolis*, 496 F. Supp. 3d 1224, 1234-35 (S.D. Ind. 2020) (citing *Snyder v. Smith*, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014)).

Defendants argue that Plaintiff's state law tort claims fail for two reasons. First, there was no notice pursuant to the ITCA's requirements. [DE 101 at 12]. Second, because the Defendants were acting within the course and scope of their employment and acting to enforce the law, they have immunity under the ITCA. [*Id.*].

Plaintiff does not respond to either argument. *See generally* [DE 104]. "Perfunctory, undeveloped arguments, without discussion or citation to pertinent legal authority are waived." *Mahaffey*, 588 F.3d at 1146. Plaintiff did not meet his burden to "present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister*, 983 F.3d at 969. For this reason, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's state law ITCA claims.

*Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment, [DE 99], is GRANTED in its entirety. The Clerk is ordered to enter judgment for Defendants and against Plaintiff. Plaintiff takes nothing by his Complaint. This case is now closed.

SO ORDERED.

ENTERED: September 11, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court